<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THOMAS RAGSDALE, Jr., <br><br> Plaintiff, <br><br> v. <br><br> HECTOR LORA, *et al.*, <br><br> Defendants. | Case No. 2:20-cv-16123 (BRM) (ESK) <br><br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion to Dismiss filed by Defendants Vincent Gentile ("Gentile"), Luis Guzman ("Guzman"), and the City of Passaic (the "City") (collectively, "Moving Defendants") seeking to dismiss Plaintiff Thomas Ragsdale, Jr.'s ("Ragsdale") Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] (ECF No. 23.) Ragsdale opposed the motion. (ECF No. 24.) Moving Defendants replied. (ECF No. 25.) Having reviewed the submissions filed in connection with the motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing, Moving Defendants' Motion to Dismiss is **GRANTED**.

**I.    BACKGROUND**

For the purposes of this Motion to Dismiss, the Court "accept[s] as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (citing

---

[1] Defendant Hector Lora ("Lora") does not join this motion.

*Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003)). The Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citing *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

At the relevant time, Ragsdale was employed as a police officer by the City. (ECF No. 16 ¶ 7.) Lora is the City's mayor. (*Id*. ¶ 6.) Guzman is the chief of the City's police department (the "PD"). (*Id*.) Gentile is the deputy chief of the PD. (*Id*.) Ragsdale alleges he was subject to unconstitutional retaliation by Defendants for his perceived political association with his then colleague Richard Diaz ("Diaz"). (ECF No. 24 at 2.)

In 2008, the City's former mayor Sammy Rivera ("Rivera") was sent to prison and succeeded by Alex Blanco ("Blanco"). (ECF No. 16 ¶ 11.) While Blanco was the City's mayor, Diaz became a captain in the PD and assigned Ragsdale to the detective bureau. (*Id*. ¶ 12.) In the bureau, Ragsdale was under the command of Gentile, who labeled Ragsdale as "Richie's boy" (Richie being a reference to Diaz) and repeatedly said to Ragsdale, and in the presence of the other officers in the bureau, that Ragsdale was assigned there "to spy for Richie." (*Id*.; ECF No. 23-2 at 16.) In 2016, Blanco was sent to prison and was succeeded by Lora. (ECF No. 16 ¶ 13.) While Blanco was facing criminal indictments and charges in 2016, Diaz mounted an insurgent campaign against Lora as Blanco's successor, which was followed by his defeat in a city election and the termination of his employment with the City.[2] (ECF No. 24 at 2.) Ragsdale asserts he was subject to Defendants' retaliation in violation of the First Amendment, due to his perceived support of Diaz' candidacy and his association with those known to support Diaz, including his friend Roy

---

[2] Ragsdale has not clarified whether Diaz directly competed with Lora for the mayor's position.

2

Bordamonte ("Bordamonte"). (*Id.*; ECF No. 16 ¶ 25.) In this regard, Ragsdale alleges four incidents of retaliation.

First, in or about 2006, Ragsdale issued traffic citations to Rivera's daughter and was then assigned a walking post on the night shift, which Ragsdale claims was a retaliation. (ECF No. 16 ¶ 10.)

The second incident involves Ragsdale's lack of promotion to a sergeant position. In 2015, Ragsdale took a civil service examination seeking a promotion to the rank of sergeant. (*Id.* ¶ 14.) The exam results were released in November 2015 on a list (the "2015 List"), where Ragsdale was ranked 18th out of the 64 candidates in the PD. (*Id.*) Between November 2015 and fall 2017, everyone ahead of Ragsdale on the 2015 List was either promoted to sergeant or removed from the list for certain reasons, except for Kenobi Ramirez who was immediately ahead of Ragsdale. (*Id.* ¶ 15.) When Ragsdale was ranked second among the remaining candidates on the 2015 List, the PD had two vacancies for sergeants. (*Id.* ¶ 16.) In August and October 2017, two sergeants retired, which increased the number of vacancies to four; such a vacancy situation continued until May 2018. (*Id.* ¶ 17.) Despite the vacancies, Defendants did not promote any candidate to sergeant between fall 2017 and May 2018. (*Id.* ¶¶ 18, 20.) In or about November 2017, Ragsdale took another examination for sergeant candidates, which produced a new list in about May 2018 (the "2018 List"), where Ragsdale was no longer ranked second. (*Id.* ¶¶ 19, 21.) After the 2018 List was published, Lora and Guzman immediately promoted four patrol officers to sergeants. (*Id.* ¶ 22.)

The third incident involves Ragsdale's summer assignment as a School Resource Officer ("SRO"). (*Id.* ¶ 26.) There has been a custom and practice at the PD that the SROs choose their summer assignments from a list of available assignments by seniority. (*Id.*) In June 2018, Guzman

and Gentile allowed a less senior police officer and SRO, Lucho Candelaria ("Candelaria"), to choose his assignment ahead of Ragsdale, so that Lora could extend a political favor to Candelaria's father. (*Id.* ¶ 27.) This left Ragsdale with a less desirable assignment. (*Id.*)

The fourth incident is about training and overtime opportunities. Since about 2010, Ragsdale has had overtime assignments as a police dispatcher for the PD. (*Id.* ¶ 28.) In spring 2020, Gentile denied Ragsdale's request to attend a training to renew Ragsdale's certification as a police dispatcher. (*Id.*) The denial led to reduced overtime opportunities for Ragsdale. (*Id.*) Other PD officers who were not politically associated with Diaz received the training and overtime opportunities. (*Id.*)

On November 13, 2020, Ragsdale filed the original Complaint. (ECF No. 1.) On March 24, 2021, with the Court's leave and without an opinion issued, Ragsdale filed the Amended Complaint. (ECF No. 16.) The Amended Complaint alleges Defendants' retaliation against Ragsdale for exercising his rights of freedom of association under the First Amendment to the Constitution of the United States and Article I of the Constitution of the State of New Jersey, asserting claims under: (1) 42 U.S.C. § 1983 against Lora, Guzman, and Gentile (collectively, the "Individual Defendants") in Count 1; (2) the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6-1, against Individual Defendants in Count 2; and (3) respondeat superior against the City in Count 3. (*Id.*) On July 12, 2021, Moving Defendants filed a Motion to Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 23), Ragsdale opposed the motion (ECF No. 24), and Moving Defendants replied (ECF No. 25).

**II.   LEGAL STANDARD**

"[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

4

However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286 (citations omitted). Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp 235–36 (3d ed. 2004)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "further factual enhancement" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v.*

*McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286 (citations omitted).

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss to a summary judgment motion, including items that are *integral to or explicitly relied upon* in the complaint." *Coulter v. Doerr*, 486 F. App'x 227, 228 (3d Cir. 2012) (citing *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999)).

### III. DECISION

#### A. Ragsdale's Claims Against the Individual Defendants Should Be Dismissed Without Prejudice

Moving Defendants argue Ragsdale's claims fail as to the Individual Defendants for several reasons: (1) the Amended Complaint fails to identify any protected activity; (2) Ragsdale makes no connection between the Individual Defendants and any protected activity; (3) Ragsdale's allegations of retaliation are barred by the two-year statute of limitations for § 1983 and the NJCRA. (ECF No. 23-2 at 12–14.) Moving Defendants further contend the particular facts of four alleged incidents of retaliation indicate they are not actionable: (1) Ragsdale's issuing a traffic summons cannot trigger the protection under the Constitution, and his consequent assignment to a walking post has nothing to do with the Individual Defendants; (2) Ragsdale's lack of promotion was due to his poor performance on the 2018 promotional examination; (3) though Candelaria was permitted to pick an assignment before Ragsdale despite being less senior, it was done as a favor by Lora to Candelaria's father rather than as an act of retaliation against Ragsdale; and (4) Ragsdale's failure to attend training is too petty an incident to warrant the Court's consideration.

6

(*Id*. at 14–16; ECF No. 25 at 14.) Moving Defendants also point out the Amended Complaint does not allege Ragsdale's perceived political association with Diaz; instead, it only alleges Ragsdale's association with Bordamonte, a fellow police officer recognized to be affiliated with Diaz. (ECF No. 25 at 9.) Moving Defendants maintain a political association is protected only if it relates to a political party or candidate; the Amended Complaint does not allege such a protected association, as it makes no mention of Diaz running for the City's mayor. (*Id*. at 14.)

Ragsdale argues simple vindictiveness against perceived political opponents is sufficient evidence for a retaliation claim; if a plaintiff is perceived to have engaged in the First-Amendment-protected conduct by giving support to a political candidate of his choice, the government's retaliation against the plaintiff for his protected conduct is actionable. (ECF No. 24 at 3.) Ragsdale insists even a minor retaliation for a protected activity can be the basis of a First Amendment retaliation claim. (*Id*.)

### 1.     Ragsdale's Allegations of Retaliation Are Mostly Time-Barred

In New Jersey, the "NJCRA, like § 1983, is subject to the State's general two-year personal injury statute of limitations." *Waselik v. Twp. of Sparta*, Civ. A. No. 16-4969, 2017 U.S. Dist. LEXIS 76646, at *13 (D.N.J. May 18, 2017) (citations omitted). The NJCRA and § 1983 claims "accrued when plaintiffs knew or should have known about those alleged violations of their rights." *Michael Bessasparis & Sht Corp. v. Twp. of Bridgewater*, Civ. A. No. 1040-19, 2021 N.J. Super. Unpub. LEXIS 820, at *20 (N.J. Super. Ct. App. Div. May 6, 2021) (citations omitted); *see also Prunkel v. Cty. of Bergen*, Civ. A. No. 17-5154, 2018 U.S. Dist. LEXIS 143973, at *14 (D.N.J. Aug. 23, 2018) ("A cause of action arising under § 1983 accrues 'when the plaintiff knew, or should have known, of the injury forming the basis of [the] action.'" (quoting *Sameric Corp. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1988))).

Here, Ragsdale commenced this litigation on November 13, 2020, asserting NJCRA and § 1983 claims against the Individual Defendants. The two-year statutory period therefore applies. Of the four alleged incidents of retaliation, only the fourth one falls within the two-year statutory period: the first one involves an unfavorable work assignment that occurred in 2006; the second one is based on Ragsdale's lack of promotion between fall 2017 and May 2018; the third one is about an unfavorable summer assignment in June 2018; and the fourth one involves the loss of certain training and overtime opportunities in spring 2020. The Court does not discern, and Ragsdale does not present, any reason to toll the statute of limitations for the four alleged incidents beyond the date of their occurrences. *See Harris v. Homecomings Fin. Servs.*, 377 F. App'x 240, 243 (3d Cir. 2010) ("In order to equitably toll a statute of limitations, a plaintiff must establish, in pertinent part, that the defendant actively misled her about her claims or that some other extraordinary circumstance prevented her from pursuing her claims." (citing *Santos ex rel. Beato v. United States*, 559 F.3d 189, 197 (3d Cir. 2009))). As a result, the first three alleged incidents of retaliation are time-barred and do not warrant the Court's consideration.

The continuing violation doctrine cannot change this conclusion. "The continuing violations doctrine 'is an equitable exception to the timely filing requirement [so that] when a defendant's conduct is part of a continuing practice, [a legal] action is timely so long as the last act evidencing the continuing practice falls within the limitations period.'" *Kleinerman v. Chao*, Civ. A. No. 05-2699, 2006 U.S. Dist. LEXIS 46822, at *13 (D.N.J. July 11, 2006) (quoting *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001)). "The plaintiff bears the burden of demonstrating that the continuing violation doctrine applies." *Makse v. Spirit Airlines, Inc.*, Civ. A. No. 09-2392, 2011 U.S. Dist. LEXIS 32759, at *10 (D.N.J. Mar. 28, 2011) (citing *West v. Phila. Elec. Co.*, 45 F.3d 744, 754 (3d Cir. 1995)). Here, Ragsdale "has never claimed the alleged acts

constituted a continuing violation, and [the Court] deem[s] this argument waived." *Koschoff v. Henderson*, Civ. A. No. 98-2736, 1999 U.S. Dist. LEXIS 16184, at *24 (E.D. Pa. Oct. 7, 1999); *see also Manning v. Chevron Chem. Co. LLC*, 332 F.3d 874, 881, n.3 (5th Cir. 2003) ("[The plaintiff] suggests that his claims might be timely under a continuing violation theory. [The plaintiff] fails, however, to adequately brief this issue, so [the court] need not address it." (citing *Kane Enters. v. Macgregor Inc.*, 322 F.3d 371, 376 n.3 (5th Cir. 2003))).

Moreover, Ragsdale fails to respond to Moving Defendants' arguments on the issue with the statute of limitations, thereby waiving the issue. *See Leisure Pass N. Am., LLC v. Leisure Pass Grp., Ltd.*, Civ. A. No. 12-3375, 2013 U.S. Dist. LEXIS 120593, at *11 (D.N.J. Aug. 26, 2013) ("Plaintiff has waived its opposition to this argument by failing to respond to it." (citations omitted)).

Therefore, only the fourth alleged incident of retaliation is not time-barred and warrants additional analysis.

### 2. Ragsdale Fails to Plead an Actionable Retaliation

"To plead retaliation for the exercise of First Amendment rights, a plaintiff must allege '(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action.'" *Mirabella v. Villard*, 853 F.3d 641, 649 (3d Cir. 2017) (citations omitted). Here, Ragsdale bases his claims on Defendants' retaliation against him due to his perceived political association with Diaz. Therefore, Ragsdale must show his alleged association with Diaz is a constitutionally protected conduct.

"The first amendment protects the 'right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.'" *Bennis v. Gable*, 823 F.2d

9

723, 727 n.4 (3d Cir. 1987) (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984)). "[T]he First Amendment also protects an employee from discrimination for failure to support the winning candidate" and "failure to engage in any political activity." *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 272–73 (3d Cir. 2007) (citations omitted). Therefore, if the Amended Complaint alleges Ragsdale's political support for Diaz who opposed Lora in a political election, then it is sufficient to raise a reasonable inference that Ragsdale engaged in a constitutionally protected conduct. *See Best v. Hous. Auth.*, 61 F. Supp. 3d 465, 472 n.10 (D.N.J. 2014) ("[V]iewing the evidence most favorably to [p]laintiff, the [c]ourt must conclude at [the summary judgment] stage that his support for Scott Evans, an opponent of Mayor Langford in the 2009 mayoral election, is sufficient to show that [the plaintiff] engaged in constitutionally protected political activity."). In fact, the Amended Complaint need not even allege Diaz was a candidate that directly competed with Lora in a political election. To assert a First Amendment retaliation claim, Ragsdale need only demonstrate he was subject to Defendants' retaliation because of his failure to support Lora in a political election.

However, the Amended Complaint alleges Ragsdale sustained retaliation from Defendants because of his perceived political association with Diaz. The alleged association was not shown to pursue any end or expression so as to trigger the First Amendment's protection; instead, the Amended Complaint only suggests the existence of such an association, without indicating the association or its members' opposition to or failure to support Lora in a political election. *See Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000) (holding that, for "a group" to be "protected by the First Amendment's expressive associational right," it "must engage in some form of expression, whether it be public or private"); *see also Jacoby & Meyers, LLP v. Presiding Justices of the First, Second, Third & Fourth Dep'ts*, 852 F.3d 178, 188 (2d Cir. 2017) (holding that, to

10

qualify as a "constitutionally-protected association," the association must "offer a means to serve other First Amendment ends, not that the association is itself a protected First Amendment activity" (citing *Wine & Spirits Retailers, Inc. v. Rhode Island*, 418 F.3d 36, 50 (1st Cir. 2005))). The Amended Complaint fails to sufficiently plead Ragsdale's constitutionally protected conduct. In other words, the Amended Complaint fails to raise a reasonable inference of Defendants' unconstitutional retaliation against Ragsdale.

Even if Ragsdale sufficiently describes his constitutionally protected conduct in his opposition brief, it cannot cure the Amended Complaint's pleading deficiency, because "a statement in a brief will not amend a deficient complaint." *Thomas v. Youderian*, 232 F. Supp. 3d 656, 670 n.9 (D.N.J. 2017) (citations omitted).

Accordingly, the Court finds Ragsdale's claims against Individual Defendants, *i.e.*, Counts 1 and 2, are inviable and warrant dismissal.

### 3.     The Dismissal of Counts 1 and 2 Is Without Prejudice

Moving Defendants argue Ragsdale should not be given leave to amend, because Ragsdale had been afforded this opportunity but failed to cure the defects in his complaint. (ECF No. 23-2 at 18.) The Court disagrees.

"A general presumption exists in favor of allowing a party to amend its pleadings." *Hunter v. Dematic USA*, Civ. A. No. 16-00872, 2016 U.S. Dist. LEXIS 65167, at *12 (D.N.J. May 18, 2016) (citing *Boileau v. Bethlehem Steel Corp.*, 730 F.2d 929, 938 (3d Cir. 1984)). "Leave to amend a complaint should be granted freely in the absence of undue delay or bad faith on the part of the movant as long as the amendment would not be futile and the opposing party would not suffer undue prejudice." *Id*. (citations omitted); *see also Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) ("[E]ven when a plaintiff does not seek leave to amend, if a complaint is vulnerable to

11

12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile." (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002))).

This litigation, commenced less than a year ago, is still at an early stage. As of July 2021, the discovery had just begun: "not all Defendants ha[d] initiated discovery," Ragsdale "ha[d] only . . . served a Notice to Produce," and the parties "fe[lt] that an end date for fact discovery should not be set until th[is] Motion to Dismiss ha[d] been resolved." (ECF No. 22 at 1.) Therefore, the Court does not find granting Ragsdale leave to amend would cause undue delay or prejudice. *C.f. Paoli v. Stetser*, Civ. A. No. 12-66, 2013 U.S. Dist. LEXIS 70247, at *20–21 (D. Del. May 16, 2013) (finding that granting the plaintiff's request for amendment would cause undue prejudice to the defendants, because the case was at a "late stage," when discovery was closed and the defendants' motion for summary judgment was pending, "with a trial date to be set pending resolution of that motion"); *AMS Constr. Co. v. Reliance Ins. Co.*, Civ. A. No. 04-2097, 2006 U.S. Dist. LEXIS 46905, at *8 (E.D. Pa. July 12, 2006) (finding that granting the plaintiffs' motion to amend would cause undue delay, when discovery was completed and the "[p]laintiffs waited approximately 21 months before seeking leave to amend the complaint"); *Wine v. EMSA Ltd. Pshp.*, 167 F.R.D. 34, 40 (E.D. Pa. 1996) (denying the plaintiff's motion to amend to avoid undue delay, "where discovery ha[d] been completed and [d]efendants' summary judgment motions ha[d] already been briefed and filed").

In addition, futility is not a ground to deny Ragsdale an opportunity to amend. "[D]ismissal without leave to amend is appropriate where a plaintiff has notice of deficiencies and fails to correct them in a first amended complaint." *Hause v. City of Sunbury*, Civ. A. No. 17-2234, 2019 U.S. Dist. LEXIS 213667, at *16 n.6 (E.D. Pa. Dec. 11, 2019) (citing *Krantz v. Prudential Invs.*

*Fund Mgmt. LLC*, 305 F.3d 140, 144 (3d Cir. 2002)); *see also Cal. Pub. Emples'. Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 165 (3d Cir. 2004) ("Plaintiffs chose at their peril not to heed the District Court's guidance and avail themselves of an opportunity to rectify the deficiencies of the [a]mended [c]omplaint. Under this scenario, justice does not require that leave to amend be given." (citing Fed. R. Civ. P. 15(a))). Though Ragsdale has amended his complaint once, the amendment was made without any guidance from this Court on the complaint's pleading deficiencies. The Court cannot rule out the possibility that Ragsdale may cure the pleading deficiencies of Counts 1 and 2.

Finally, the Court does not discern, and Moving Defendants do not assert, any bad faith on Ragsdale's part that would make granting Ragsdale leave to amend inequitable.

Accordingly, Counts 1 and 2 will be dismissed without prejudice.

**B.    Ragsdale's Claim Against the City Should Be Dismissed With Prejudice**

Moving Defendants maintain the Amended Complaint as to the City must be dismissed, because it fails to articulate a viable claim against the Individual Defendants. (ECF No. 23-2 at 18.) The Court agrees.

On Count 3, Ragsdale seeks to hold the City liable for the actions of the Individual Defendants based on respondeat superior. (ECF No. 16 ¶ 42.) Because Ragsdale's claims against the Individual Defendants are inviable, the City cannot be held vicariously liable. Therefore, Count 3 warrants dismissal.

Moreover, even if Ragsdale has a viable claim against an Individual Defendant, Court 3 should be dismissed as a matter of law, because "the doctrine of respondeat superior does not provide an independent cause of action under New Jersey law." *Rowan v. City of Bayonne*, 474 F. App'x 875, 878 n.3 (3d Cir. 2012) (citing *Carter v. Reynolds*, 815 A.2d 460, 463 (N.J. 2003)). As

13

a result, Count 3 should be dismissed with prejudice, and no leave to amend is warranted. *See Allen v. Quicken Loans, Inc.*, Civ. A. No. 17-12352, 2018 U.S. Dist. LEXIS 192066, at *20 (D.N.J. Nov. 9, 2018) ("Because [the plaintiff's] claims fail as a matter of law, [they] are dismissed with prejudice." (citations omitted)); *Countryside Oil Co. v. Travelers Ins. Co.*, 928 F. Supp. 474, 480 n.4 (D.N.J. 1995) ("Because the [c]ourt concludes that claims raised in plaintiff's brief fail as a matter of law, the application to amend is denied as futile." (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962))).

### IV. CONCLUSION

For the reasons set forth above, Moving Defendants' Motion to Dismiss is **GRANTED**. Ragsdale's Counts 1 and 2 are **DISMISSED WITHOUT PREJUDICE**, and Count 3 is **DISMISSED WITH PREJUDICE.** Ragsdale has 30 days to file a Second Amended Complaint, and failure to do so will automatically turn dismissals without prejudice into dismissals with prejudice. An appropriate order follows.

**Date: September 9, 2021**                                  */s/ Brian R. Martinotti*
                                                             **HON. BRIAN R. MARTINOTTI**
                                                             **UNITED STATES DISTRICT JUDGE**