**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THOMAS RAGSDALE, JR., <br><br> Plaintiff, <br><br> v. <br><br> HECTOR LORA, *et al.*, <br><br> Defendants. | Case No. 2:20-cv-16123 (BRM) (ESK) <br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court are Defendants Vincent Gentile ("Gentile") and Luis Guzman's ("Guzman") Motion to Dismiss Plaintiff Thomas Ragsdale, Jr.'s ("Ragsdale") Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 47) and Defendant Hector Lora's ("Lora") (together with Gentile and Guzman, "Moving Defendants") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 50). Ragsdale opposed the Motions. (ECF No. 51.) Lora replied. (ECF No. 52.) Having reviewed the parties' submissions filed in connection with the Motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing, Moving Defendants' Motions to Dismiss are **GRANTED**.

**I.    BACKGROUND**[1]

For the purposes of this Motion to Dismiss, the Court "accept[s] as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most

---

[1] The factual and procedural backgrounds of this matter are well-known to the parties and were previously recounted by the Court in its Opinion dismissing Ragsdale's Amended Complaint.

favorable to [the plaintiff]." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003)). The Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citing *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

Ragsdale has been employed as a police officer by the City of Passaic (the "City") since 1998. (ECF No. 35 ¶ 7.) Lora has been the mayor of the City since November 2016. (*Id*. ¶ 13.) Guzman is the chief of the City's police department (the "PD"). (*Id*.) Gentile is the deputy chief of the PD. (*Id*.)

In 2008, the City's former mayor Sammy Rivera ("Rivera") was sent to prison. (*Id*. ¶ 11.) Alex Blanco ("Blanco") was the successor. (*Id*.) While Blanco was the City's mayor, Richard Diaz ("Richie") became a captain in the PD and assigned Ragsdale to the detective bureau. (*Id*. ¶ 12.) In the bureau, Ragsdale was under the command of Gentile, who labeled Ragsdale as "Richie's boy" and repeatedly said to Ragsdale, and in the presence of the other officers in the bureau, that Ragsdale was assigned there "to spy for Richie." (*Id*.) In 2016, Blanco was sent to prison and Lora was chosen by him as his successor. (*Id*. ¶ 13.) In September 2016, Richie ran against Lora for the office of Mayor of the City and lost. (*Id*.) Ragsdale asserts he was subject to Defendants' retaliation for Ragsdale's exercise of "freedom of association with officers[2] recognized to be affiliated with Richie." (*Id*. ¶¶ 30, 36.) In this regard, Ragsdale alleges four incidents of retaliation.

---

(ECF No. 30.) Therefore, the Court includes only the facts and procedural background relevant to this Motion.

[2] Ragsdale alleges his friend is also known as a "Richie's Boy." (*Id*. ¶ 25.)

First, in or about 2006, Ragsdale issued traffic citations to Rivera's daughter and was then assigned a walking post on the night shift, which Ragsdale claims were retaliations. (*Id.* ¶ 10.)

The second incident involves Ragsdale's lack of promotion to a sergeant position. In 2015, Ragsdale took a civil service examination seeking a promotion to the rank of sergeant. (*Id.* ¶ 14.) The exam results were released in November 2015 on a list (the "2015 List"), where Ragsdale was ranked eighteenth out of the sixty-four candidates in the PD. (*Id.*) Between November 2015 and fall 2017, everyone ahead of Ragsdale on the 2015 List was either promoted to sergeant or removed from the list for certain reasons, except for Kenobi Ramirez who was immediately ahead of Ragsdale. (*Id.* ¶ 15.) When Ragsdale was ranked second among the remaining candidates on the 2015 List, the PD had two vacancies for sergeants. (*Id.* ¶ 16.) In August and October 2017, two sergeants retired, which increased the number of vacancies to four. (*Id.* ¶ 17.) Despite the vacancies, Moving Defendants did not promote any candidate to sergeant between fall 2017 and May 2018. (*Id.* ¶¶ 18, 20.) In or about November 2017, Ragsdale took another examination for sergeant candidates, which produced a new list in about May 2018 (the "2018 List"), where Ragsdale was no longer ranked second. (*Id.* ¶¶ 19, 21.) After the 2018 List was published, Lora and Guzman immediately promoted four patrol officers to sergeants. (*Id.* ¶ 22.)

The third incident involves Ragsdale's summer assignment as a School Resource Officer ("SRO"). (*Id.* ¶ 26.) There has been a custom and practice at the PD that the SROs choose their summer assignments from a list of available assignments by seniority. (*Id.*) In June 2018, Guzman and Gentile allowed a less senior police officer and SRO, Lucho Candelaria ("Candelaria"), to choose his assignment ahead of Ragsdale so that Lora could extend a political favor to Candelaria's father. (*Id.* ¶ 27.) This left Ragsdale with a less desirable assignment. (*Id.*)

The fourth incident is about training and overtime opportunities. Since about 2010, Ragsdale has had overtime assignments as a police dispatcher for the PD. (*Id.* ¶ 28.) In spring 2020, Ragsdale requested to attend a training to renew his certification as a police dispatcher. (*Id.*) The request was denied by Gentile. (*Id.*) The denial led to reduced overtime opportunities for Ragsdale. (*Id.*) Other PD officers who were not associated with Richie received the training and overtime opportunities. (*Id.*)

On November 13, 2020, Ragsdale filed the original Complaint. (ECF No. 1.) On March 24, 2021, Ragsdale filed the Amended Complaint. (ECF No. 16.) The Amended Complaint alleges Defendants' retaliation against Ragsdale for exercising his rights of freedom of association under the First Amendment to the Constitution of the United States and Article I of the Constitution of the State of New Jersey, asserting claims under (1) 42 U.S.C. § 1983 against Moving Defendants in Count 1; (2) the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6-1, against Moving Defendants in Count 2; and (3) respondeat superior against the City in Count 3. (*Id.*) On September 9, 2021, the Court dismissed Ragsdale's claim against the City with prejudice and allowed Ragsdale to amend his retaliation claims. (ECF Nos. 30, 31). On November 4, 2021, Ragsdale filed the Second Amended Complaint. (ECF No. 35.) The Amended Complaint asserts retaliation claims against Moving Defendants in violation of 42 U.S.C. § 1983 (First Count) and NJCRA (Second Count). On January 20, 2022, Gentile and Guzman filed a Motion to Dismiss. (ECF No. 47.) The next day, Lora filed a Motion to Dismiss. (ECF No. 50). On January 21, 2022, Ragsdale opposed the Motions. (ECF No. 51). On the same day, Lora replied. (ECF No. 52.)

## II.   LEGAL STANDARD

"[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However,

the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286 (citations omitted). Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "further factual enhancement" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v.*

*McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286 (citations omitted).

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss to a summary judgment motion, including items that are *integral to or explicitly relied upon* in the complaint." *Coulter v. Doerr*, 486 F. App'x 227, 228 (3d Cir. 2012) (citing *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999)).

### III.   DECISION

#### A.   First Three Pre-November 2018 Claims Are Barred by Statute of Limitations.

Plaintiff argues the continuing violation doctrine should apply to revive claims related to the three incidents that occurred between 2006 and June 2018. (ECF No. 51 at 4.) The Court disagrees.

To maintain retaliation claims, each of the challenged incidents should be "individually actionable as a First Amendment retaliation claim when it occurred." *Livingston v. Borough of McKees Rocks*, 223 F. App'x 84, 89 n.3 (3d Cir. 2007). In New Jersey, the "NJCRA, like § 1983, is subject to the State's general two-year personal injury statute of limitations." *Waselik v. Twp. of Sparta*, Civ. A. No. 16-4969, 2017 WL 2213148, at *3 (D.N.J. May 18, 2017) (citations omitted) (ECF No. 30 at 7.)

"First Amendment retaliation claims are not subject to the 'continuing violations' exception to the statute of limitations." *Myers v. Cnty. of Somerset*, 515 F. Supp. 2d 492, 501 n.1 (D.N.J. 2007) *aff'd*, 293 F. App'x 915 (3d Cir. 2008); *Toscano v. Borough of Lavallette*, Civ. A.

No. 04-4412, 2006 WL 1867197, at *2 n.3 (D.N.J. June 30, 2006) (same). This is because every act of retaliation in response to exercises of a First Amendment right is a discrete and individually actionable event. *See O'Connor v. City of Newark*, 440 F.3d 125, 127–28 (3d Cir. 2006) ("[The] rule that individually actionable allegations cannot be aggregated is of particular import in the context of First Amendment retaliation claims. First Amendment retaliation claims are always individually actionable, even when relatively minor.").

Here, all acts of alleged retaliation in Ragsdale's Second Amended Complaint that occurred between 2006 and June 2018 were discrete events, individually actionable at the time they occurred. It is apparent from the face of Ragsdale's Second Amended Complaint that these claims have "not been brought within the statute of limitations." *Cito v. Bridgewater Twp. Police Dep't*, 892 F.2d 23, 25 (3d Cir. 1989) (internal quotation marks omitted). Therefore, the first three alleged incidents of retaliation are time barred and cannot serve as a basis for Plaintiff's retaliation claims under Section 1983 and NJCRA.

### B. Ragsdale Failed to State a Claim based on his Denial of Request to Attend Training.

In Ragsdale's fourth alleged incident of retaliation, Ragsdale alleges his request to attend training to renew Ragsdale's certification as a police dispatcher was denied by Gentile. (ECF No. 35 ¶ 28.) Ragsdale claims Gentile's denial of Ragsdale's request led "to reduced overtime opportunities for [Ragsdale]." (*Id.*) Ragsdale argues Gentile's denial of Ragsdale's request to train "can also be an adverse employment action" in the context of his First Amendment Retaliation claims (ECF No. 48 at 4.) The Court disagrees.

"To plead retaliation for the exercise of First Amendment rights, a plaintiff must allege '(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally

protected conduct and the retaliatory action.'" *Mirabella v. Villard*, 853 F.3d 641, 649 (3d Cir. 2017) (citations omitted). "The Free Speech Clause contained within the New Jersey Constitution 'is generally interpreted as co-extensive with the First Amendment,' so the analysis of [] state free speech claim is identical to its federal counterpart." *Palardy v. Twp. of Millburn,* 906 F.3d 76, 80 (3d Cir. 2018) (*citing Twp. of Pennsawaken v. Schad*, 733 A.2d 1159, 1169 (N.J. 1999)).

Here, as the Court explained in its previous opinion (ECF No. 30 at 11), Ragsdale's mere "label" as "Richie's boy" (ECF No. 48 at 2) is not a constitutionally protected activity. Ragsdale rehashes his previously rejected argument, alleging his protected activity is his "perceived support of Richard Diaz' candidacy and/or his association with those known to support Diaz." (ECF No. 51 at 2.) However, Ragsdale's "association with an 'amorphous, non-political group' of people who support the former Chief is not constitutionally protected political activity." *Goldrich v. City of Jersey City*, Civ. A. No. 15-885, 2017 WL 6209205, at *4 (D.N.J. Dec. 8, 2017) (holding identification as a "Bubba guy" and his support for the demoted Chief of Police is not a cognizable political affiliation); *see also Best v. Hous. Auth.*, 61 F. Supp. 3d 465, 473 n.10 (D.N.J. 2014) ("[M]erely being related to Craig Calloway, a political opponent of Mayor Langford, is insufficient to constitute protected political activity.").

Second, Ragsdale fails to allege retaliatory action. "The key question . . . is whether the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)) (internal quotation marks omitted). The effect of the alleged conduct on the employee's freedom of speech need not be great to be actionable, but it must be more than de minimis or trivial. *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006). Although the line where trivial conduct ends and substantive constitutional violations begin is not

entirely clear, the Third Circuit has explained decisions relating to "promotion, transfer, recall and hiring" are actionable, whereas "criticism, false accusations, or verbal reprimands" are not. *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003).

Here, denial of a training request does not fit the definition articulated in *Brennan*. As the Third Circuit explained, "[a]n employer's denial of a training request, without something more, is not itself an adverse employment action." *Cross v. Postmaster Gen. of the U.S.*, 696 F. App'x 92, 95 (3d Cir. 2017) (quoting *Clegg v. Ark. Dep't of Corr.*, 496 F.3d 922, 928 (8th Cir. 2007)). Therefore, the Court finds denial of training that *could* lead to "opportunity to work overtime" is insufficient to deter a person to exercise his First Amendment rights.

Third, Ragsdale fails to adequately plead the requisite causation element of his claim. To establish the requisite causal connection, a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. *Jean v. Deflaminis*, 480 F.3d 259, 267 (3d Cir. 2007). The Third Circuit instructed "[a] court must be diligent in enforcing these causation requirements because otherwise a public actor cognizant of the possibility that litigation might be filed against him, particularly in his individual capacity, could be chilled from taking action that he deemed appropriate and, in fact, was appropriate." *Id.* Although "there is no bright-line rule for the time that may pass between protected speech and what constitutes actionable retaliation," a five-month gap is not "an unusually suggestive temporal proximity," and two days is proximate enough, while 19 months is not, and three weeks was not proximate enough either. *Dondero v. Lower Milford Township*, 5 F. 4th 355, 361–62 (3d Cir. 2021) (internal citations omitted).

Here, Ragsdale asserts he was labeled as a "Richie's boy" around 2008 (ECF No. 35 ¶¶ 11, 12.) Richie announced his candidacy for Mayor of the City in 2016 but lost. (*Id.* ¶ 13.) Richie was no longer part of Ragsdale's team after September 2016. (*Id.*) The fourth alleged incident of retaliation occurred in the spring of 2020. (*Id.* ¶ 28.) Based on Richie's absence in Ragdale's team for almost four years and the significant time lapse[3] between Ragsdale's perception as a "Richie's boy" by his colleagues and the alleged incident of retaliation, the Court finds Ragsdale failed to satisfy the causation element as a matter of law. *See Chetty Holdings Inc. v. NorthMarq Capital, LLC*, 556 F. App'x 118, 121 (3d Cir. 2014) ("[N]othing precludes a court from determining proximate cause as a matter of law if a jury could not reasonably differ on the issue.").

## IV.  CONCLUSION

For the reasons set forth above, Moving Defendants' Motion to Dismiss is **GRANTED**. Ragsdale's Second Amended Complaint is **DISMISSED WITH PREJUDICE**.[4] An appropriate order follows.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
UNITED STATES DISTRICT JUDGE

Dated:  March 15, 2022

---

[3] The Court notes the only viable claim not time barred is Ragsdale's denial of training claim, and none of the time-barred claim can be used to support "a pattern of antagonism." *O'Connor v. City of Newark*, 440 F.3d 125, 129 (3d Cir. 2006) (holding time-barred claims "cannot be resurrected by being aggregated and labeled continuing violations").

[4] An amended complaint is futile if it "would fail to state a claim upon which relief could be granted." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). The Court finds allowing Ragsdale to amend his complaint for the *third time* would be futile since all claims but one are time barred, and Ragsdale has failed to cure the deficiencies of the one surviving claim noted by the Court's previous opinion. (ECF No. 30.)